UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JAVIER ROBLES,

     Defendant.

Case No. 16-20582
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO VACATE UNDER 28 U.S.C. § 2255 [454]**

---

From July 2014 through November 2016, Javier Robles, his nephews David and Miguel Garcia, and many others, were part of an organization that distributed large quantities of heroin, fentanyl, and methamphetamine, in California and Detroit and then funneled the drug proceeds back to California through numerous bank accounts. On December 19, 2018, Robles and the Garcias were convicted, by jury verdict, of one count of conspiracy to possess with intent to distribute and distribution of controlled substances. Miguel and Robles were also convicted of one count of conspiracy to launder monetary instruments. Robles received a concurrent sentence of 270 months on the drug conspiracy and 240 months on the money laundering conspiracy. (ECF No. 353, PageID.3814.) His convictions were upheld on appeal. Robles now seeks post-conviction relief, claiming his trial and appellate counsel were ineffective in numerous respects. As Robles' claims lack merit, the motion is DENIED.

## I.

This case involved significant pretrial and trial practice. In ruling on the defendants' direct appeals, the Sixth Circuit summarized the key facts. Those facts are pertinent to the issues raised in Javier Robles' post-conviction motion under 28 U.S.C. § 2255. Thus, the Court will adopt and repeat most of them here:

> The Detroit Drug Enforcement Administration (DEA) began investigating drug trafficking activity in Detroit in June 2015. The DEA learned that a local drug dealer who dealt kilogram levels of heroin in the Detroit area, Edward Foster, was receiving his supply from Robles, who would send him heroin from California via USPS. In November 2016, Detroit DEA agents arrested Kenny Spencer, another local drug dealer, who told agents that he had just received a package from Robles containing a kilogram of heroin. Agents seized the package from Spencer's residence and found 800 grams of heroin.
>
> DEA agents obtained a search warrant for Robles's phone's real-time location data, which showed the phone at what was later confirmed to be Robles's home, 835 Sunset Avenue in Pasadena, California. Agents reviewed data from Robles's phone and found that he had sent Miguel Garcia's name and bank account information to Foster. Agents then learned that the Detroit police had seized $25,000 from Miguel in Detroit in February 2015. . . .
>
> On November 14, 2016, Detroit DEA agents flew to Pasadena to arrest Robles and execute search warrants at his personal residence, 835/837 Sunset, and what was believed to be his "stash house" at 2094/2096 Fair Oaks, where David also lived. Robles told agents that he was a "middle-man" who sold kilograms of heroin to dealers in Detroit through USPS, including Foster and Spencer, and used Bank of America accounts to collect his money. Agents also arrested David who, at the direction of Robles, sold 1.36 kilograms of methamphetamine to coconspirator Darius Cooper. At the Fair Oaks stash house, agents found approximately 6.1 kilograms of methamphetamine. In David's bedroom at the Fair Oaks house, agents recovered two drug scales and multiple small bags of methamphetamine, heroin, and cocaine packaged for distribution.
>
> On the same day they arrived in Pasadena, before the Detroit DEA agents arrested Robles and David and executed the search warrants, the agents discovered that Homeland Security Investigations (HSI) went to

835/837 Sunset in June 2016 and seized a large amount of narcotics from the residence. The Detroit agents used this information, that HSI had recovered drugs from Sunset a few months ago, in their probable-cause statement for the Sunset and Fair Oaks warrants.

Two years later, in preparation for trial in July 2018, a Detroit DEA agent spoke with an HSI agent who was involved in the June 2016 seizure. The DEA agent learned that HSI had discovered Robles was involved in drug trafficking from an illegal state wiretap, the "Riverside wiretap." While the government did not concede that the Riverside wiretap was illegal, it agreed not to present any evidence at trial that was derived from the wiretap, including the drugs HSI seized in 2016 and two packages seized by USPS in 2015. Defendants argued that because the Sunset and Fair Oaks probable cause affidavits contained information from the Riverside wiretap—the 2016 HSI drug seizure—to support the application for warrants, all evidence seized from the Sunset and Fair Oaks residences must be suppressed.

The district court held a four-day suppression hearing during which it excluded evidence of the 2016 HSI seizure and the USPS packages, but found the rest of the government's evidence admissible under the independent-source doctrine. The district court found that the Sunset and Fair Oaks affidavits still contained probable cause even when omitting the information that HSI seized drugs from the Sunset residence in 2016.

At trial, the jury found David, Miguel, and Robles guilty of conspiracy to possess with intent to distribute and distribution of controlled substances. Additionally, the jury found Robles and Miguel guilty of conspiracy to launder money.

*United States v. Garcia*, 834 F. App'x 134, 137–38 (6th Cir. 2020), *cert. denied*, 141 S.

Ct. 1436 (2021).

Ultimately, the Sixth Circuit rejected Robles' challenges to the denial of his motion to suppress evidence allegedly tainted by an illegal search and the quantity of drugs that the Court found attributable to him. *Id*. at 136–37

Robles now seeks to vacate his conviction and sentence under 28 U.S.C. § 2255. (ECF No. 454.) He relies on "[b]ald assertions and conclusory allegations" which do

not provide grounds for an evidentiary hearing. *Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017). Because the motion, record of prior proceedings, and governing law "conclusively show that [Robles] is entitled to no relief[,]" a hearing is not necessary. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018); 28 U.S.C. § 2255(b); Rules Governing § 2255 Cases, Rule 4(b). Indeed, Robles' motion makes no attempt to show a reasonable probability that, but for his counsel's alleged unprofessional errors, the result of the jury trial would have been different.

## II.

A federal prisoner may challenge his sentence by way of a motion filed pursuant to 28 U.S.C. § 2255. To prevail, Robles must show that the sentence imposed is "in violation of the Constitution or laws of the United States," or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).

Robles' § 2255 motion primarily contends that his Sixth Amendment right to a fair trial was violated due to the ineffective assistance of his trial and appellate counsel, who were the same lawyer. This requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Deficient performance means his lawyer's representation fell below an objective standard of

4

reasonableness. *Id*. at 694. But *Strickland* sets out "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Prejudice means there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

According to Robles, his counsel was ineffective by failing to (1) request the Riverside wiretap line sheets and move to disclose the government's confidential informants for the motion to suppress; (2) object to the testimony of a California police sergeant regarding an anonymous tip he received about Robles on February 16, 2015 as a confrontation clause violation; (3) make a more thorough pretrial challenge to the systemic underrepresentation of African-American and Hispanic jurors; and (4) raise these issues when he handled the appeal. (ECF No. 454.)

It is true that claims of ineffective assistance of counsel are properly raised in this § 2255 motion, *United States v. Graham*, 484 F.3d 413, 421–22 (6th Cir. 2007), and are not subject to the procedural default rule, *Massaro v. United States*, 538 U.S. 500, 504 (2003). But it is also true that a defendant may not use a § 2255 motion, under the guise of an ineffective-assistance-of-counsel claim, to relitigate issues decided against him on direct appeal. *See, e.g., DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Ultimately, Robles' claims fail on their merits. The Court will address them in turn.

## A.

First, Robles raises an issue with his counsel's handling of the pre-trial motion to suppress. His arguments do not satisfy either *Strickland* prong.

### 1.

*Deficient performance: discovery of line-sheets.* Before Robles was arrested on the underlying charges, different agencies in Michigan and California—DEA Los Angeles, DEA Detroit, and the Pasadena Police Department—had investigated different aspects of the Robles Drug Trafficking Organization at different times. Prior to trial, it was learned that certain evidence the government intended to introduce may have derived from an illegal California wiretap (the "Riverside wiretaps"). Without admitting the illegality, the government agreed not to introduce certain evidence. Defendants, though, sought to exclude even more evidence as fruit of the poisonous wiretaps. They believed there had to be more of an overlap between the California and Detroit investigations.

Robles now contends that his trial counsel was ineffective for failing to demand discovery of the wiretap line-sheets and disclosure of the identities of the confidential informants utilized in the California and Detroit investigations. The line sheets contained names, phone numbers, and information about who was using the intercepted phone number at a specific time. (ECF No. 454, PageID.7262.) According to Robles, there was no way for his trial counsel to know if the wiretaps would reveal a connection between the Detroit and California investigations without reviewing them. (ECF No. 465, PageID.7499.) He says "[t]he line sheets would have enabled the

defense to substantiate the argument that the two investigations did not merely overlap, but rather that agents worked hand in hand and exchanged information from the wiretaps, and most importantly the information was not sought from an independent source." (ECF No. 454, PageID.7270.)

Throughout the course of the suppression proceedings, however, there was nothing to put Robles' counsel on notice that the line sheets needed to be reviewed. The government explains that after learning about the Riverside wiretaps, they produced to the defense over 800 pages of discovery, including the search warrant affidavits, orders, 10-, 20-, 30-day reports, closing documents, and any report of a seizure related to Robles derived from the wiretaps. (ECF No. 464, PageID.7485.) The Court then conducted a lengthy suppression hearing to determine whether additional trial evidence may have derived from the wiretaps. DEA Detroit agents Chad Hermans and Austin Roseberry testified as to how they learned of Robles' identity on July 9, 2015, having nothing to do with any California investigation. (ECF Nos. 359, 360.) They explained that it was not until after they confirmed Robles' identity that they learned from their counterparts at DEA Los Angeles that Robles had previously been the target of a California state wiretap. (ECF No. 359, PageID.4008.) Agent Roseberry testified that he received the line sheets for the wiretap on July 20, 2015, which was after they had identified Robles. He further testified that he did not use them. And the reason was credible: the agents in California were concerned for the safety of their sources and asked DEA Detroit not to use any information gained from that wiretap. (ECF Nos. 359, 360.) The agents further testified that the search

warrants for Ed Foster and Kenny Spencer's residences submitted on July 22, 2015 and the remainder of the DEA Detroit investigation contained no information from the California wiretaps. (ECF No. 464, PageID.7473–74 (citing the record).) As one example, two of Robles' phones numbers that agents retrieved from phones they seized from Foster were not even part of the wiretaps. (ECF No. 359.)

Robles' counsel extensively cross-examined the Detroit DEA agents and the financial investigator (Frank Scartozzi) to determine if there was any use of wiretap information or sharing of information with California agents prior to DEA Detroit's July 2015 identification of Robles. (ECF Nos. 359, 360.) Robles' counsel then requested and was permitted to interview and obtain written testimony from DEA LA agent Paul Tajii, one of the agents who conducted the wiretaps, and Officer Robert Dubois with the Pasadena Police Department, who was investigating Robles in 2016. (ECF Nos. 229-1, 229-2.) This testimony did not establish use, or reason to believe there was use, of any Riverside wiretap information by Detroit agents prior to their identification of Robles. The Court, however, still permitted Robles' counsel to submit supplemental briefing after the suppression hearing, in which he challenged the agents' credibility that there was no connection between the DEA LA wiretaps and the DEA Detroit investigation. (ECF No. 232.)

After considering the record, this Court found that certain evidence was derived from the wiretaps and ordered it excluded from trial but found that other evidence, including from Ed Foster and Kenny Spencer, was derived from

independent sources and thus, was not subject to exclusion. (ECF No. 358, PageID.3939–50.) As summarized by the Sixth Circuit:

> At the suppression hearing, the court found that the Detroit DEA did not use any of the Riverside wiretap information in their investigation. The court credited the testimony of several agents that they did not learn about the Riverside wiretap until July 2015, after they had already arrested Foster and used his phone to identify his source of supply as Robles. The court found that the agents discovered Robles's Fair Oaks and Sunset properties from a confidential source, who told them that a man named Hernandez Milan got his supply from Robles. Agents corroborated this information by setting up a controlled buy with Milan, whom they observed leave the Fair Oaks property and sell half a pound of crystal methamphetamine to the confidential source. The court also found that the DEA learned about the Sunset residence through Spencer, who told agents that he had been to the property with Robles and was expecting another shipment of drugs from there shortly.

*Garcia*, 834 F. App'x at 139. In other words, there was uncontroverted, credible evidence that the Detroit agents did not use any information from the Riverside wiretaps. Detroit agents had also corroborated information learned from confidential sources. Agents gathered evidence from Detroit drug dealer Kenny Spencer who was a direct customer of Robles. And the chronology of the various Michigan and California investigations of Robles (as laid out by the government in its response brief) further corroborated that the Detroit agents did not need information from the wiretaps to make their case.

To now pick out one isolated piece of evidence that Robles' trial counsel did not review, does not establish deficient performance. As the Court said in *Strickland*, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." 466 U.S. at 691; *see also Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) ("While the temptation

9

to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation."). There is nothing to suggest that the agents were all lying under oath at the suppression hearing or that the wiretap line-sheets contained any helpful revelations. Robles can do no more than speculate that the line-sheets "could" have contradicted the other evidence or "could" have impeached the agents. This is insufficient to establish deficient performance. *See Matthews v. United States*, No. 20-2289, 2021 U.S. App. LEXIS 19914, at *7–8 (6th Cir. July 2, 2021) (rejecting defendant's argument that his counsel was deficient in failing to hire private investigator to interview cooperating witnesses to "call into question their credibility" because the argument was "based entirely on speculation" and defendant "point[ed] to no evidence to show that further investigation by counsel would have yielded any helpful information"); *United States v. Valencia*, 188 F. App'x 395, 399–400 (6th Cir. 2006) (rejecting claim of ineffective assistance of counsel where counsel failed to have seized bags of methamphetamine independently tested because defendant's speculative assertions that the drugs may have been amphetamine and the bags may have been from different sources was not evidence that counsel's decision was unreasonable).

**2.**

*Deficient performance: disclosure of confidential informants*. Robles also faults trial counsel for failing to file a motion to compel the identities of the government's confidential informants to support his argument that DEA Detroit must have relied on the Riverside wiretaps in its investigation against Robles. (ECF No. 454, PageID.7260.)

Robles refers to the following informants. First, DEA Detroit learned about local drug dealer Edward Foster from a confidential source who purchased heroin from Foster. (ECF No. 365, PageID.5125.) After executing a search warrant at a stash house associated with Foster, agents seized his cell phones. (*Id*. at PageID.5139.) The agents eventually learned that Foster's source of supply was Robles. Second, on February 16, 2015, an anonymous tipster called Sergeant Cortina of the West Covina, California police department and advised that a red Ford Ranger had just picked up a large amount of cash. (ECF No. 363, PageID.4636.) Another officer conducted a traffic stop. Robles was the driver of the car and officers seized $159,135 in cash. (*Id*. at 4656, 4659.) Third, in September 2016, a confidential source advised Pasadena police officer and DEA task force member Robert DuBois about drug dealer Hernandez-Millan. (ECF No. 364, PageID.4835.) Further investigation by Pasadena officers connected Hernandez-Millan to the Garcias and Robles. (ECF 229-2.)[1]

---

[1] Robles contends that this informant specifically identified him as a drug supplier and thus his lawyer was obligated to learn his identity. (ECF No. 465, PageID.7502.) This is simply inaccurate. The informant identified only Hernandez-Millan and then further police investigation—electronic and physical surveillance

Robles speculates that the wire-tap line-sheets may have referenced these informants, thus somehow showing that the Detroit investigation relied on the illegal wiretaps. But again, speculation is insufficient to establish deficient performance. Especially given the high bar for disclosure of confidential informants. *See United States v. Doxey*, 833 F.3d 692, 706 (6th Cir. 2016) (while government privilege to withhold identity of confidential informants is not absolute, courts must "balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense'" (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957))). And the speculation is weak. The West Covina source was anonymous and not known to the officers. (ECF No. 464, PageID.7488.) The Pasadena source provided information in September 2016, nearly a year after the Riverside wiretaps were completed. (*Id.*) And his information pertained to Hernandez-Millan. It took further investigation to ultimately connect Robles. The same is true of the confidential source who provided information only about Foster. In other words, neither of the known informants identified Robles.

Moreover, a motion to reveal the identity of confidential informants is usually denied "when the informer was not a participant in the underlying alleged crime, and instead 'was a mere tipster or introducer.'" *United States v. Doxey*, 833 F.3d 692, 707 (6th Cir. 2016) (quoting *United States v. Sharp*, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985)). The defendant "must provide some evidence that disclosure of the informant's

---

and a controlled drug buy—ultimately revealed Robles as the source of supply. (ECF No. 229-2.)

identity would assist in his defense before disclosure will be warranted." *Id.* (quotation omitted). Robles' speculation that confidential informants who merely provided information about drug trafficking activity that ultimately led law enforcement to Robles might be refenced on the wiretap line-sheets does not warrant a finding that Robles' counsel was ineffective for failing to file a motion to disclose the informants' identities. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (rejecting claim of ineffective assistance of counsel where defense counsel "may have wisely decided not to pursue suppression motions that would have likely been futile"); *Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005) ("Failing to file a frivolous motion does not constitute ineffective assistance of counsel").

### 3.

*Prejudice*. In his opening brief, Robles identifies the ten pieces of evidence his trial counsel sought to suppress as fruits of the illegal Riverside wiretaps. (ECF No. 454, PageID.7256–57.) But he does not further develop a prejudice argument. In his reply brief, he asserts that "[t]rial counsel completely neglected the fact that [confidential informants] led to Robles and never bothered to demand their identity or even request a hearing to determine the relevance of their identity in connection to the DEA LA investigation and the line sheets. Had trial counsel adequately raised these issues, the outcome of the suppression motion would have been different, as additional evidence could have been suppressed because of the illegal wiretaps." (ECF No. 465, PageID.7504–05.)

13

But "the threshold issue is not whether [defendant's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). In other words, "[c]ounsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *Id.*; *see also Strickland*, 466 U.S. at 686 (the question is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

As discussed, the Court has been given no reason to believe that the wire-tap line-sheets would have altered the suppression ruling. Nor any reason to believe the line-sheets would have altered the result of the trial. Robles' motion does not address the other substantial evidence of his guilt. The fact that two co-defendants testified against him. His cousin Jamie Diaz testified about depositing and withdrawing money for Robles. Kenny Spencer gave detailed testimony about his drug dealing activity with Robles—the kilograms of heroin he purchased, the money he mailed back to pay for the drugs, a trip to Mexico to meet with the supplier. Co-defendant Miguel Garcia was stopped in Detroit and had $25,000 on his person; both the denominations and how the cash was bundled were consistent with drug trafficking. Robles spoke with an agent after his arrest and admitted that he was a middle-man, sold kilograms of heroin to dealers in Detroit, including Foster and Spencer, used USPS to ship his drugs, and used Bank of America accounts to funnel his drug money

14

back to California. (ECF No. 369, PageID.5908–16.) There was other documentary and testimonial evidence of Robles' drug dealing and money funneling that were not among the ten items sought to be excluded. And financial examiner Frank Scartozzi testified about deposits of significant amounts of cash in Michigan with corresponding withdrawals in California during the time period charged for accounts connected to Robles. (ECF Nos. 368, 369.)

Without a showing of prejudice, as well as deficient performance, Robles has no viable claim for ineffective assistance of counsel based on his lawyer's failure to demand the line-sheets or the disclosure of the confidential informants' identities.[2]

## B.

Robles next contends that his trial counsel was ineffective for failing to challenge the testimony of Sergeant Cortina of the West Covina Police Department. As mentioned, Cortina received an anonymous tip on February 16, 2015 that a red Ford Ranger had picked up a substantial amount of money. That tip ultimately resulted in a traffic stop of a car being driven by Robles from which the officers seized a bag containing $159,135 in cash. (ECF No. 363, PageID.4659–62.) The cash was in large bundles, in green plastic wrap, and smelled of fabric softener. (*Id.*)

---

[2] Robles further argues that the government violated its *Brady* obligations and thus his due process rights by failing to produce the line sheets. (ECF No. 454, PageID.7267.) This argument was not raised on direct appeal and is procedurally defaulted. *See Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) ("A petitioner must raise his claims on direct appeal, '[o]therwise, the claim is procedurally defaulted' for purposes of § 2255 review." (quoting *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001)). While Robles would presumably contend his lawyer's failure to raise it on appeal provided cause to exclude the procedural default, he does not address, let alone establish, prejudice.

During trial, Cortina testified "that he was in Riverside area on the 60 Freeway traveling westbound. He was following a red Ford Ranger that had just picked up a large amount of bulk currency." (ECF No. 363, PageID.4636.) Robles' trial counsel objected on the ground that the testimony was hearsay. The government responded, "it's not for the truth of the matter asserted, just for the background and how the investigation started that day." (*Id*.) The Court overruled the objection. (*Id*.)

Robles contends that his lawyer was ineffective for failing to object to this anonymous tip testimony as a Confrontation Clause violation. The Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). The Sixth Circuit has held that statements by a confidential informant are "testimonial" and thus, subject to the confrontation clause. *United States v. Cromer*, 389 F.3d 662, 675–76 (6th Cir. 2004). But the Court further clarified that "[t]he Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id*. at 676 (quotation omitted). This includes statements that "serve[] the purpose of explaining how certain events came to pass or why the officers took the actions they did." *Id*.

Robles relies on *Cromer*. There, a police officer testified that a confidential informant indicated that drug sales had been made from a particular residence and that an individual resembling the defendant had been involved in the drug

16

transactions. *See* 389 F.3d at 673–74. True, the Court found that testimony learned from the informant that "could only have been [offered] to help establish" an element of the prosecution's case was inadmissible. *Id*. at 676. But the Court also held the officer's testimony admissible to the extent it merely "alluded to" the confidential informant's statements for the background purposes of "explaining how certain events came to pass or why the officers took the actions they did" in searching the residence identified by the informant. *Id*.

The government here reiterates its trial position that Cortina's testimony about the tip was offered simply to show how the investigation began on that day. The government relies on *United States v. Dietz*, 577 F.3d 672 (6th Cir. 2009), which analyzed *Cromer*. In *Dietz*, FBI Agent David Potts testified that the FBI was surveilling Deitz because it had received tips from informants that Outlaws gang members from the Louisville, Kentucky chapter regularly obtained cocaine from members of the Dayton, Ohio chapter and transported it back to Kentucky. *Id*. at 682. In rejecting a Confrontation Clause challenge to this testimony on plain error review, the Sixth Circuit explained that "[t]he admission of Agent Potts's testimony explaining why authorities were following Deitz on his drive to and from Dayton . . . provided mere background information, not facts going to the 'very heart of the prosecutor's case.'" *Id*. at 684 (citing *Cromer*, 389 F.3d at 667–78). "In fact," said the Court, "it was not the informant's statements that were material, but rather, Potts's own statement about what he found when he stopped Deitz, which was not hearsay." *Id*. at 684.

17

The same is true here. Cortina's limited testimony about the tip he received regarding the Ford ranger picking up a large amount of money was simply to explain why the officers conducted a traffic stop. It was not a fact going to the heart of the prosecution's case. And it was the non-hearsay testimony of the West Covina agents about the money they found and the manner in which they found it that was material. Robles' counsel was not deficient in raising only a hearsay objection and not a Confrontation Clause objection as well.

And even if this evidentiary misstep could be deemed deficient performance, Robles makes no attempt to establish prejudice. He offers no analysis of how any modification of Cortina's testimony would have altered the jury's verdict in light of all of the other overwhelming evidence of Robles' guilt.

Robles' Confrontation Clause argument does not establish ineffective assistance of counsel.

## C.

A criminal defendant has a Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community. To establish a violation of the fair-cross-section requirement, a defendant must initially show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Robles' counsel filed a motion challenging the selected jury for "contain[ing] no African-American males and no recognizable Hispanic-Americans." (ECF No. 249, PageID.1607.) Robles now contends that this was "inadequate." (ECF No. 454, PageID.7260.) He believes his counsel was deficient for failing to do a more thorough "analysis of the formula employed by the Eastern District of Michigan to determine if there is underrepresentation of African Americans and Hispanics in the jury pool because of a constitutional deprivation or systemic exclusion." (ECF No. 454, PageID.7283.)

But "Counsel could not be ineffective for failing to raise a meritless argument." *Shakir v. United States*, Nos. 21-5180/5181, 2021 U.S. App. LEXIS 28562, at *11 (6th Cir. Sept. 20, 2021) (citing *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)). The jury selection plan in the Eastern District of Michigan has been approved by the Judicial Council of the Sixth Circuit. *See* E.D. Mich. Admin. Order No. 13-AO-016. As another court in this district explained one year prior to Robles' trial, the district's jury selection plan "has already survived numerous constitutional and statutory challenges" and the "district has taken extensive measures to ensure that juries represent a fair cross section of the community, which clearly belies any intent to exclude minorities." *United States v. Wesley*, No. 15-cr-20718, 2017 U.S. Dist. LEXIS 91931, at *16-17 (E.D. Mich. June 15, 2017) (citing cases); *see also United States v. Edmond*, 815 F.3d 1032, 1045 (6th Cir. 2016) (defendant failed to show that any underrepresentation of African Americans or residents of Detroit stemmed from systematic exclusion), *vacated on other grounds*, 137 S. Ct. 1577 (2017). More recently

the Sixth Circuit has reiterated that "the Eastern District of Michigan is not required to produce in every instance a jury venire that is ethnically proportional to its population of registered voters. Rather, the district's approved jury selection process is random." *Soto v. United States*, No. 19-1594, 2020 U.S. App. LEXIS 22750, at *10 (6th Cir. July 21, 2020) (where only two Hispanics were part of the jury venire, Court found defendant did not show the underrepresentation was the result of systematic exclusion).

And even if Robles' counsel should have probed more deeply into whether African Americans and Hispanics are systemically excluded from Eastern District of Michigan jury pools, Robles has again failed to demonstrate any prejudice as a result. As in *Soto*, Robles "has neither alleged nor shown that there is a 'reasonable probability' that a jury selected from a pool with a different ethnic composition 'would have reached a different result' in the face of overwhelming evidence of [Robles'] guilt." *Soto*, 2020 U.S. App. LEXIS 22750 at *10.

The Court finds no basis to vacate Robles' conviction based on this allegation of ineffective assistance of counsel.

## D.

Lastly, Robles contends that "[a]ppellate counsel, who was the same as trial counsel, was ineffective for failing to raise the issues raised in this [§ 2255] petition on direct appeal." (ECF No. 454, PageID.7284.)

The *Strickland* standard also applies to claims for ineffective assistance of appellate counsel. *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005). When

a claim lacks merit, "appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) ("Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."). Thus, to the extent Robles seeks to fault appellate counsel for failing to raise the claims on direct appeal that he did not raise during trial, the claims lacked merit, as explained above.

## III.

For these reasons, Robles cannot establish a basis for granting his § 2255 motion. The motion is DENIED. Nor is Robles entitled to a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). In order to receive a certificate of appealability, Robles must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But for the reasons explained above, Robles has not done so.

SO ORDERED.

Dated: April 20, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

21